IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | 4:05CR3019-2 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| KHALAT JAMALTHAEL ALAMA, | ) | |
| Defendant. | ) | |

Khalat Jamalthael Alama has submitted a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion"). (Filing 242.) He has also submitted a motion to proceed in forma pauperis (filing 243) and a motion for the appointment of counsel (filing 245). Subjecting the § 2255 motion to initial review under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, I will dismiss the motion with prejudice. I will also deny the motions to proceed in forma pauperis and for appointment of counsel.

I.

After the jury in his first trial was unable to reach a verdict, in a second trial Defendant was found guilty of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. (Filing 170.) I sentenced him to 188 months in prison, to be followed by five years of supervised release. (Filing 208.)

The factual background of this case is as follows. Defendant admitted at trial that he was a methamphetamine user, but denied that he was engaged in a conspiracy

to distribute the drug. He asserted that the government had proved no more than a series of sales agreements between him and the government's cooperating witnesses. When it affirmed the conviction on direct appeal, the Court of Appeals summarized the testimony of the government witnesses as follows:

> The government's main witness was Satar Alkafaji, a fellow Iraqi with whom Alama lived at times during the alleged conspiracy. Alkafaji first admitted that he pleaded guilty to a charge that he conspired to distribute methamphetamine. He then testified that, beginning in early 2004, he allowed Alama to sell methamphetamine, initially a few grams at a time and later in larger quantities. Alkafaji accompanied Alama on his first large sale but thereafter did not supervise Alama, require prepayment for the drugs, or meet Alama's customers because "we were building a relationship and the confidence and trust was strong." Alkafaji testified that he and Alama shared a cell phone for their drug related activity, and that customers called and dealt with either of them. Alkafaji also testified that he took Alama to meet Alkafaji's methamphetamine source in Grand Island, Nebraska.
>
> The government also introduced testimony by various methamphetamine customers of Alkafaji and Alama. Chadwick Walters testified that he bought ounces and half-ounces from Alama six to eight times. Teresa Jones testified she bought half-ounce and ounce quantities of methamphetamine from Alama and Alkafaji for resale and personal use. Joshua Love and Daniel Zeiger bought methamphetamine from Alama and Alkafaji. Alama testified in his own defense that he occasionally used methamphetamine, once with Alkafaji. But he denied buying methamphetamine from Alkafaji, selling methamphetamine to anyone, or knowing Walters and Zeiger.

*United States v. Alama*, 486 F.3d 1062, 1064–65 (8th Cir. 2007).

In addition to finding the evidence sufficient to prove conspiracy, the Court of Appeals rejected an argument that I erred when I overruled a Fourth Amendment objection and admitted evidence of contraband seized during a March 17, 2005

search. *Id*. at 1065-67. The Court of Appeals gave this background for the Fourth Amendment issue:

> Following his indictment and arraignment, Alama was released on bond. An arrest warrant issued when he violated the terms of release,[1] and he was seen at the home of Jane Snelling, who lived with her two daughters and her niece, Alama's girlfriend, Nicole Delgado. [On March 17, 2005[2],] U.S. Marshals went there to arrest him, accompanied by local law enforcement officers. The officers knocked on the door, announced their purpose, and ordered everyone out of the house. Snelling, her daughter, and Delgado emerged and were taken across the street, where Snelling consented to a search of her home and signed a written consent form.[3] Surveillance continued, and some time later Alama came out of the house and was taken into custody. The officers then searched the home, finding methamphetamine and marijuana, drug paraphernalia, a digital scale, and numerous plastic baggies in the bedroom where Alama had been living with Delgado and in a nearby toilet.
>
> Alama filed no pretrial motion to suppress this evidence. At trial, Snelling and the officer who obtained her consent to search briefly described the above sequence of events. The government then called Officer Forrest Dalton, who conducted the search and took custody of the seized contraband. After laying foundation, the government offered three physical exhibits Dalton identified as comprising the contraband. Defense counsel objected based upon a Supreme Court decision "just

---

[1]Defendant cut off his monitoring bracelet. (Filing 238 (Sentencing Tr.) at 12 (finding that cutting off pretrial release monitoring device and forcing officers to arrest for pretrial release violation constituted obstruction of justice).)

[2]( Filing 204 (Presentence Report) at p. 15, ¶ 17.)

[3]Snelling testified at trial that at the time she consented, she did not know whether Alama was in the house. (Trial Tr. at 314-15, *found at* Filing 218, CM/ECF pp. 68-69); *Alama*, 486 F.3d at 1067.

-3-

before we started this trial," a reference to *Georgia v. Randolph* [547
U.S. 103 (2006)].[4]

*Id*. at 1065-66.

On direct appeal, Defendant asserted that *Randolph* required the police to obtain his consent even though Ms. Snelling, the primary occupant of the home, had consented to search. The Court of Appeals rejected this argument. It observed that prior to *Randolph*, the Supreme Court had held that "the police may conduct a warrantless search with the consent of an occupant who they reasonably believe has common authority over the property even if a co-occupant later objects." *Id*. at 1066 (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974)). As the Court of Appeals explained, the Court in *Randolph* broke new ground by holding that a search violated the Fourth Amendment "when both co-occupants were present and the police conducted a warrantless search based on the consent of one despite the other's express refusal to consent." *Alama*, 486 F.3d at 1066. The Court of Appeals observed that the Court in *Randolph* drew a fine line to reconcile its holding with *Rodriguez* and *Matlock*: "'if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.'" *Id*. at 1066 (quoting *Randolph*, 547 U.S. at 121). The Court of Appeals found that Alama's case "obviously falls on the *Rodriguez* and *Matlock* side of the line," noting that when the police knocked on Ms. Snelling's door to execute the arrest warrant, Defendant did not come to the door and object but instead disobeyed the officer's command for

---

[4]*Randolph* was not decided until March 22, 2006. Defendant's first trial took place from January 30, 2006 to February 6, 2006. The trial which resulted in his conviction began on April 10, 2006 and ended April 13, 2006. Trial counsel demonstrated his significant skills as a defense attorney when he identified and raised the *Randolph* issue at the second trial.

everyone to exit the house and remained hidden inside for a time. When Defendant finally emerged from the house, Snelling had already consented to the search. *Id.* at 1066.

The Court of Appeals rejected an additional Fourth Amendment argument made by Defendant on direct appeal. This additional argument is at the core of one of the assertions of ineffective assistance of counsel. The Court in *Randolph* stated that its fine-line test would not apply, and the Fourth Amendment rights of a potentially objecting tenant would be violated if there was "evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection . . . ." *Randolph*, 547 U.S. at 121). The Court of Appeals rejected Alama's argument that this exception applied, finding "no evidence that Alama objected to the search after his arrest and before the search occurred," and observing that neither Alama nor the officers executing the search were asked whether there was any conversation when Alama was arrested, and that Alama was not asked whether he would have objected to the search had he been asked for consent. *Id.* at 1067.

II.

Defendant asserts that "trial counsel was ineffective for failing to investigate, call witnesses, and challenge the admission of evidence from an unrelated crime which was not connected to [Defendant]." (Filing 242 at CM/ECF p. 6.) I briefly review the applicable legal standard before considering these assertions.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He or she must establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88; *Wiggins v. Smith*, 539

U.S. 510, 521 (2003). The defendant must also show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the petitioner. *Id*. at 694-695. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Wiggins*, 539 U.S. at 534. Merely showing a conceivable effect is not enough. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006).

The court need not address both components if the defendant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

### *FAILURE TO INVESTIGATE AND CALL WITNESSES*

Regarding the allegation that trial counsel was ineffective for failure to investigate and call witnesses, Defendant asserts that "[i]nstead of preparing a defense, counsel did not investigate the case or talk to any potential defensive witness whatsoever." (Filing 242 at CM/ECF p. 6.) The only supporting details are Defendant's statements in the § 2255 motion that (1) "[b]efore trial, [he] told counsel that the drugs found in the Snelling home did not belong to him and the persons visiting the house could identify the responsible party" and (2) that he "further informed counsel that his girlfriend could impeach the allegations of a drug conspiracy being offered by government witnesses who were all seeking sentence reductions for felony convictions." (*Id.*) This is insufficient to establish prejudice as required by *Strickland*.

"To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir.1994)). This requires proof of the identity of the potential witness and the substance of what that witness's testimony would have been. Defendant fails to specify either the names of the visitors to the Snelling house who would have had this information, or the person those visitors would have identified as the owner of the drugs. *See, e.g., Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir.) (holding that individual who filed a § 2255 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness, which was not enough to undermine confidence in the outcome of the trial, as required by *Strickland*), *cert. denied*, 493 U.S. 898 (1989).

Defendant asserts that his girlfriend could have impeached the testimony of the government witnesses who were testifying that they brought drugs from him in an attempt to gain sentence reductions. He has not produced an affidavit from his girlfriend indicating what she would have testified, and consequently cannot prove prejudice. Furthermore, even assuming that the girlfriend could have testified as to matters that would call the credibility of these government witnesses into question, the decision not to call Defendant's drug user girlfriend as an impeachment witness did not change the outcome of the trial. The credibility of the witnesses to be impeached was already called into question by the fact that those individuals had pled guilty to drug offenses and were cooperating with the government in an attempt to obtain sentence reductions. Their plea agreements were admitted into evidence at trial. (Filing 168 (Trial Exhibit List).) Indeed, trial counsel's strategy was so effective that the first trial against Defendant ended in a mistrial when the jury could not reach a verdict, despite overwhelming evidence against him.

## FAILURE TO CHALLENGE ADMISSIBILITY OF EVIDENCE

This allegation concerns the contraband found in the March 17, 2005 search of the Snelling house (methamphetamine, a digital scale, and numerous plastic baggies). Defendant asserts that "[a]fter [he] was taken into custody and removed from the premises, police conducted a search of the Snelling residence without asking further permission or providing any reason for doing so." ([Filing 242](#) at CM/ECF p. 5.) He alleges that "[a]lthough the drugs seized by police were never charged against Petitioner, or directly connected to him, the drugs were admitted as evidence of an unrelated conspiracy charge against Petitioner *without opposition* from defense counsel." (*[Id.](#)* (emphasis added).) I understand Defendant to assert that trial counsel should have objected to the admission of the drugs found in the March 17 search on three grounds: the drugs did not belong to Defendant, the drugs could not be used as evidence of the conspiracy which had ended before the search occurred, and the search was invalid without Defendant's consent. These contentions are all without merit.

### *Ownership of Drugs*

There was evidence from which a reasonable jury could have concluded that the drugs found in the toilet and other contraband found in the March 17, 2005 search belonged to Defendant. As trial counsel's failure to object to the admission of the drugs as evidence on this ground would have been unavailing, Defendant cannot establish that trial counsel's failure to object prejudiced him.

The § 2255 motion implies that I, as the trial judge, was concerned that the drugs found on March 17 did not belong to Defendant, in that it includes this statement: "[a]t sentencing, the trial judge stated his concern that other drug users had access to the area where the drugs were found." ([Filing 242](#) at CM/ECF p. 5.) Defendant has misconstrued a statement I made at his sentencing hearing. The

-8-

government sought a sentence enhancement for perjury, based on its assertion that Defendant lied when he denied ownership of the drugs found on March 17. I rejected that enhancement, noting that a perjury enhancement is appropriate only when there is unimpeachable factual evidence that the defendant lied. I then observed that under the facts of this case, where "other people had access to that area [the toilet]," including Alama's drug user girlfriend, it was possible though not likely that Alama was telling the truth when he denied ownership of the March 17 drugs. ([Filing 238](Filing 238) (Sentencing Tr.) at CM/ECF p. 11.)

*Limited Admissibility of Contraband*

The record clearly shows that counsel *did* object to use of the contraband found on March 17 as evidence of the conspiracy. Counsel made repeated objections in this regard, including an objection made when the government's lawyer referred to this evidence in her closing statement. *See, e.g.*, T. 301-307 ([Filing 218](Filing 218) at CM/ECF pp. 55-62) (colloquy regarding continuing objection to admission of the contraband seized on March 17, 2005, resulting in instruction to jury that since the contraband was seized after the ending date of the conspiracy, it was admitted for the limited purpose of showing motive, opportunity, preparation, plan, knowledge, or absence of mistake or accident regarding the alleged conspiracy); T. 457-58 ([Filing 219](Filing 219) at CM/ECF pp. 45-46) (trial counsel objected during government's closing statement to reference to the contraband found on March 17, 2005, court overruled objection and reminded the jury that the March 17 evidence was admitted for a limited purpose).

*Fourth Amendment Objections*
*to Admissibility of Fruits of March 17, 2005 Search*

Contrary to Defendant's assertions in his § 2255 motion, trial counsel *did* object to the admissibility of the fruits of the March 17, 2005 search for the reason

that *Randolph* required Defendant's consent to search in addition to that of Ms. Snelling, the primary occupant. The Court of Appeals considered whether I erred in admitting this evidence over the *Randolph* objection and affirmed, finding no error. *Alama*, 486 F.3d at 1065-67.

Defendant may be making a slightly different argument regarding ineffective assistance of counsel with respect to the March 17 contraband: that trial counsel was ineffective for failing to lay a proper factual foundation for a *Randolph* argument. On direct appeal, the Court of Appeals found that the exception to the *Randolph* bright-line rule for co-tenants who were removed from the entrance of a residence by law enforcement so that they could not object to search did not apply, as there was no evidence that law enforcement officers removed Alama from the entrance to the Snelling home "'for the sake of avoiding a potential objection.'" *Alama*, 486 F.3d at 1066 (quoting *Randolph*, 547 U.S. at 121). The Court of Appeals found no support in the record for Alama's argument, and noted that at trial Alama was not asked whether he would have objected to the search had he been asked, and "[n]either Alama nor the officers who testified for the government were asked whether there was any conversation when Alama was arrested." *Id*. at 1067. Construed liberally, the § 2255 motion may assert that trial counsel was ineffective for failing to ask these questions. Even if trial counsel's performance was constitutionally deficient because these questions were not asked (and I make no finding that it was), Defendant must establish prejudice and he has not. Nowhere in the § 2255 motion does Defendant assert that he would have refused consent if asked.

### III.

The request to proceed in forma pauperis will be denied, as there is no filing fee for § 2255 motions. Defendant has also moved for the appointment of counsel. The rules governing § 2255 proceedings do not require appointment of counsel unless an evidentiary hearing is required. Rule 8(c) of the Rules Governing § 2255

[Proceedings for the United States District Courts](#).  Otherwise, no constitutional or statutory provision necessitates appointment of an attorney to represent a defendant in § 2255 proceedings.  A convicted prisoner has no constitutional right to counsel in post-conviction proceedings.  *[Ellis v. United States](#)*, 313 F.3d 636, 652 (1st Cir. 2000) (citing *[Pennsylvania v. Finley](#)*, 481 U.S. 551, 555 (1987)).  Accordingly, the motion for appointment of counsel will be denied.

    For the foregoing reasons,

    IT IS ORDERED:

1.    The § 2255 motion ([filing 242](#)) is denied;

2.    The motions to proceed in forma pauperis ([filing 243](#)) and for the appointment of counsel ([filing 245](#)) are also denied, and

3.    Judgment shall be entered by separate document.

June 6, 2008.        BY THE COURT:

                *s/Richard G. Kopf*
                United States District Judge